70

400 P.2d 945

Carolyn. HAYES, a minor, by Betty L. Evans, her mother and next friend, Plaintiff-Appellant,

v.

William J. HAGEMEIER and Paul Nutter, d/b/a Paul Nutter & Son School Bus Charter Service, Defendants-Appellees.

No. 7185.

Supreme Court of New Mexico.

May 13, 1963.

Dissenting Opinion May 27, 1963.

Rehearing Denied April 28, 1965.

McAtee, Toulouse, Marchiondo, Ruud & Gallagher, Albuquerque, for appellant.

Modrall, Seymour, Sperling, Roehl & Harris, Frank H. Allen, Jr., Albuquerque, for appellees.

NOBLE, Justice.

Plaintiff, Carolyn Hayes, a minor, has appealed from a judgment denying recovery for personal injuries following a jury verdict finding the issues in defendant's favor.

Very briefly, the facts are that Carolyn, an eight-year-old school child, was being returned home from school on a bus, owned

by defendants Nutter and operated by Hagemeier. The bus stopped for a red light at the corner of Twelfth and Candelaria streets, in Albuquerque, New Mexico, and proceeded across the intersection with the green traffic light. There, the bus stopped immediately adjacent to the right hand curb and sidewalk, with its rear some five feet beyond the pedestrian crosswalk, to discharge school children. Some twenty or twenty-five children, including Carolyn, left the bus. All of the children, except Carolyn, followed the sidewalk to the pedestrian crossing, but Carolyn crossed in front of the bus and was struck and injured by a passing vehicle.

The action was by Carolyn, a minor, by her mother and next friend, against the owners and operator of the bus. During the trial, Betty Evans was allowed an oral trial amendment claiming medical expenses paid by her for her daughter. Following the jury verdict finding the issues in defendants' favor, plaintiffs moved for a new trial which was denied by the court. This appeal followed.

 A question is presented at the outset as to whether Betty Evans perfected an appeal. Both the motion and order granting appeal were in the singular. The notice only named Carolyn as the appellee. This court has a duty to determine whether it has jurisdiction of an appeal. As to cases filed prior to March 15, 1961, a timely allowance of an appeal is necessary to confer jurisdiction upon the Supreme Court of an appeal from the judgment of a district court. Chavez v. Village of Cimarron, 65 N.M. 141, 333 P.2d 882; Public Service Company of New Mexico v. First Judicial District Court, 65 N.M. 185, 334 P.2d 713; Breithaupt v. State, 57 N.M. 46, 253 P.2d 585. The record fails to disclose a timely appeal by Betty Evans.

It is conceded that traffic at the intersection of Twelfth and Candelaria streets is controlled by traffic lights and that the school bus did not operate its special warning devices when it discharged the school children at that intersection.

Section 64–18–48, N.M.S.A.1953, reads:

"A. When stopping to receive or discharge school children on a roadway, the operator of a school bus shall drive his vehicle to the extreme right side of the paved or traveled portion. Before discharging any passengers the school bus shall be brought to a complete STOP, and the special warning devices provided in section 64–18–47 New Mexico Statutes Annotated, 1953 Compilation shall be in operation the full time the bus is stationary.

"B. Whenever a school bus stops to discharge school children who must cross the roadway at a point not under the control of a traffic officer or a clearly visible electrical or mechanical traffic signal, the school children shall cross

the roadway in front of the standing school bus. The bus shall not be started until all school children undertaking to do so have safely crossed the roadway.

"C. Any operator of a school bus failing to comply with the provisions of this section shall be punished as provided in section 64–22–4 New Mexico Statutes Annotated 1953 Compilation, and shall have his driver's license suspended for a period not exceeding three [3] months."

The principal question raised by objections to testimony and refusal to give requested instructions is whether violation of that portion of the statute, which requires operation of the special warning devices while discharging school children, constitutes negligence per se and makes defendants liable for Carolyn's injuries.

 It has been held in New Mexico that violation of a statute constitutes negligence per se and when, as a proximate result thereof, a person is injured, damages may be recovered if the statutory provision violated was for the benefit of the person injured. Bouldin v. Sategna, 71 N.M. 329, 378 P.2d 370; Zamora v. J. Korber & Co., Inc., 59 N.M. 33, 278 P.2d 569. First, we examine the statute to determine whether the provision of the statute violated was for the benefit of plaintiff under the circumstances at the time of the accident.

A guide to the proper construction of statutes is provided in Reese v. Dempsey, 48 N.M. 417, 152 P.2d 157, where it was said:

"* * * In the construction of a statute, in order to determine the true intention of the legislature, the particular clauses and phrases should not be studied as detached and isolated expressions, but the whole and every part of the statute must be considered in fixing the meaning of any of its parts. State [ex rel. People's Bank & Trust Co. of Las Vegas] v. York, 24 N.M. 643, 175 P. 796. All parts of an act relating to the same subject should be considered together, and not each by itself. Sakariason v. Mechem, 20 N.M. 307, 149 P. 352. All legislation is to be construed in connection with the general body of the law. Dorman v. Sargent, 20 N.M. 413, 150 P. 1021. * *"

 The evils which the legislature intended to correct and the purpose of the legislation must be considered in construing a statute. It cannot be assumed that the legislature would do a futile thing. Davies Warehouse Co. v. Bowles, 321 U.S. 144, 64 S.Ct. 474, 88 L.Ed. 635; Bergner v. State, 144 Conn. 282, 130 A.2d 293; Clark v. Clark, 165 Ohio St. 457, 136 N.E.2d 52; 2 Sutherland, Statutory Construction (3rd. Ed.), § 4510.

The statute being considered was a part of § 109.7, Ch. 139, Laws 1953, a code

regulating traffic on the highways. Applying the principles of statutory construction, all other parts of the same traffic code which are in pari materia must be examined. Section 64–18–46, N.M.S.A.1953, requires motor vehicles to stop at least ten feet before reaching a school bus, stopped to receive or discharge school children, and while its signals are in operation, and such vehicles may not proceed so long as such signals are being operated.

The purpose of these statutes, and of the requirement that school buses be equipped with and operate warning signals when receiving or discharging school children becomes apparent when all the applicable statutes are read and considered together. It becomes immediately apparent that the legislature recognized that school buses are usually required to discharge school children at places where there are no traffic controls. It seems clear that, recognizing this fact, the legislature, in order that there always be traffic controls for the safety of school children, provided that the school bus itself should control the traffic where no mechanical or electrical traffic controls are provided. Subsection B of § 64–18–48, supra, recognizes that control of traffic by the school bus is unnecessary, at least where traffic is under control of a traffic officer or mechanical or electrical traffic signals.

As a part of the traffic control by a school bus, it is required that children cross in front of the bus when they are discharged at a place not under other traffic control. Under such circumstances, the bus is required to operate its signals and to remain stationary until all children have safely crossed the road. That, together with the prohibition against other vehicles passing such a bus provides traffic control for the safety of the children just as traffic control lights do where installed. The language is:

"Whenever a school bus stops to discharge school children * * * at a point not under the control of a traffic officer or a clearly visible electrical or mechanical traffic signal, the school children shall cross the roadway in front of the standing school bus. * *"

We think it is implicit in the statute that discharged school children shall remain off the traveled portion of the roadway and proceed off the roadway to the pedestrian crosswalk when they are discharged from the bus at a traffic controlled intersection. That purpose of the legislature becomes manifest when it requires that "[t]he bus shall not be started until all school children undertaking to do so have safely crossed the roadway," only when children are discharged where no traffic controls are provided. A bus discharging children at a traffic controlled intersection is not required to remain stationary until all children have safely crossed the street under protection of its traffic signals, but, under such circumstances, may start as soon as the children have alighted from the bus. The statute.

therefore, does not contemplate that the bus signals provide the protection for such discharged children in crossing the roadway at traffic controlled intersections.

Section 64–18–64, N.M.S.A. 1953, requires the director of school transportation to adopt and enforce regulations, not inconsistent with the act, to govern operation of all school buses and provides that such regulations shall be a part of every school bus contract and that the contract of any bus owner may be cancelled for failure to obey all such regulations.

Much of the testimony objected to had to do with whether the state director of school transportation, pursuant to § 64–18–64, adopted regulations directing school bus operators not to use their signal devices when discharging school children at traffic controlled intersections and to instructions given to school bus drivers to that effect.

Plaintiffs assert that even if such regulations were made, directing non-use of bus signals at traffic controlled intersections, they would nevertheless be contrary to the requirement of § 64–18–48, supra, and therefore void and of no effect. Defendants, on the contrary, urge that compliance with such directive of the department of education, its director or school bus safety officer, and instructions by the state police, excused non-compliance with the statute and relieved them of liability even though there was violation of a statute. This squarely presents the question whether failure to comply with statutory requirements may be excused.

On the question of when violation of a statute imposing a criminal penalty is considered negligence per se, Prosser, Law of Torts, § 34, page 161, has this to say:

> "Where the statute is interpreted as intended to protect the class of persons in which the plaintiff is included, against the risk of the type of harm which has in fact occurred, the weight of authority holds that an unexcused violation is negligence in itself, and that the court must so direct the jury. The standard of conduct has been fixed by the legislature, and 'jurors have no dispensing power by which to relax it,' except in so far as the court may recognize the possibility of a valid excuse for disobedience of the law. * * * *"

See Martin v. Herzog, 228 N.Y. 164, 126 N.E. 814.

■ Some courts hold that statutory violations create a presumption of negligence, which may be rebutted by a showing of an adequate excuse, but call for a binding instruction in the absence of evidence. Alarid v. Vanier, 50 Cal.2d 617, 327 P.2d 897; 898; Jones v. Co-operative Ass'n of America, 109 Me. 448, 84 A. 985, L.R.A.1915E; 745; Guinan v. Famous Players-Lasky Corporation, 267 Mass. 501, 167 N.E. 235. A very considerable minority have held that

a violation is only evidence of negligence which the jury may accept or reject as it sees fit. Prosser, Law of Torts, p. 161. New Mexico has held violation of a statute to be negligence per se, but has said that damages may be recovered for such violation only if, as a proximate result thereof, a person is injured and if the statute violated was for the benefit of the person injured. Bouldin v. Sategna, supra; Zamora v. J. Korber & Co., Inc., supra.

The statute claimed to have been violated in this case imposes only a criminal penalty but has provided no civil recovery. Regarding such statutes, 2 Harper & James, Law of Torts, § 17.6, p. 1010, has this to say:

"* * * Where the legislature has provided no civil recovery, however, the court is entering upon judicial lawmaking in any event by adopting standards of the criminal law in civil litigation. It is mechanical and doctrinaire, therefore, for courts to do this without exercising their own judgment as to whether the transplanted standard is appropriate to the new purpose. * *"

The author, 2 Harper & James, § 17.6, points out that the majority of jurisdictions have adopted, at least in form, the negligence per se rule. But, it is said that the tide has swung the other way. Continuing, it is said:

"* * * This newer trend has not been marked by a widespread express

rejection of the negligence per se rule in states which formerly adhered to it, although this has been the result in two important jurisdictions. For the most part it has been accomplished by the increasing acceptance of one or another of the avenues of escape treated in this section * * *."

Excuse from liability for violation of a statute was recognized in Jackson v. Southwestern Public Service Co., 66 N.M. 458, 349 P.2d 1029, in which the test as stated in Alarid v. Vanier, supra, was adopted:

"In our opinion the correct test is whether the person who has violated a statute has sustained the burden of showing that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law."

In the instant case, the bus drivers were not advised to disregard or disobey the statutory requirement as in Jackson. It is conceded, for the sake of the argument, that the department of education did issue its regulation directing non-use of bus signals at traffic controlled intersections. Instructions to bus drivers, at schools for that purpose, by the director of school bus safety and by state police officers was not in the nature of advice to disregard or disobey the requirement for use of signals at all stops, but rather was that in following

the directive not to operate the signals at traffic controlled intersections there was compliance with the statute. We think that, under the facts of this case, it was for the jury to determine, under proper instructions by the court, whether defendants sustained the burden of showing that they did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law. The jury was instructed on excuse from violation of the statute and that instruction is not complained of on this appeal. We conclude that the objections to the testimony, because it sought to excuse the defendants, are without merit.

Likewise, the contention that unqualified witnesses were permitted to express an opinion is determined to be without merit. Whether a witness is qualified to testify as an expert rests largely within the trial court's discretion in the first instance, State v. Deming, 66 N.M. 175, 344 P.2d 481, 77 A.L.R.2d 964, and that determination will not be disturbed on appeal unless the ruling was manifestly wrong or the court has applied wrong legal standards in the determination. Landers v. A. T. & S. F. Ry., 68 N.M. 130, 359 P.2d 522.

Plaintiff, for the first time on appeal, asserts as error the admission of certain testimony of a state police officer expressing his opinion as to an interpretation of a New Mexico statute. While there were general objections to a line of examination of various witnesses, none appear to have been made specifically on the ground of its inadmissibility because it interpreted a statute. Complaint cannot be made for the first time on appeal where no motion is made to strike the testimony, even though the testimony would have been rejected if objection and motion to strike had been made at the trial. Hancock v. Beasley, 14 N.M. 239, 91 P. 735; McKenzie v. King, 14 N.M. 375, 93 P. 703; Bishop v. Mace, 25 N.M. 411, 184 P. 215; Frei v. Brownlee, 56 N.M. 677, 248 P.2d 671.

Other questions presented or argued have either been disposed of by what has been said, found to be without merit, or are unnecessary to the decision.

The judgment appealed from should be affirmed.

It is so ordered.

COMPTON, C. J., and CHAVEZ, J., concur.

MOISE, Justice (dissenting).

Although not a member of the panel which considered this cause, I am convinced that the opinion as filed is erroneous in several particulars, and I desire that my views be made a matter of record.

As I read § 64-18-48, N.M.S.A. 1953, it cannot be interpreted as undertaken in the opinion. Briefly, paragraph A places cer-

tain duties on the driver of a bus. It requires him to stop his bus on the extreme right side of the roadway when he is picking up or discharging school children. It further requires that he come to a complete stop and put into operation his special warning device before discharging passengers, and that the warning device continue in operation while stopped.

Paragraph B of the section is in no sense a modification of paragraph A. If the discharge point is not controlled by a traffic officer or mechanical traffic signal, it adds a requirement that the bus shall not be moved until all the children have safely crossed the roadway and under such facts requires that the school children cross in front of the bus.

While I agree that the requirements of paragraph B are devised to provide a traffic control through use of the warning device on the bus, there being no traffic officer or mechanical traffic signal present, I find nothing in the section which in any way modifies the absolute requirement of paragraph A.

Whereas it may be true, as stated by the majority, that in such a situation confusion results when the mechanical traffic signal indicates that automobiles may proceed, if the bus warning device indicates they should stop, it is not for the court, or the commissioner of motor vehicles, or the school director of transportation to alter the plain requirements. Neither does it appear that any regulation to this effect was ever promulgated, and if it had been it would have been void as conflicting with the statute. §§ 64–18–47(a) and 64–18–64, N.M.S.A. 1953. By what theory it can be suggested that the state police or associate director of bus transportation for the Albuquerque school system could place a different interpretation on the law, I fail to comprehend.

Not only this, but to permit these people to testify as experts concerning their interpretation of the statute is error by any theory. Never, to my knowledge, has such testimony concerning the meaning of a statute been permitted from any witness no matter how learned in the law. See Beal v. Southern Union Gas Co., 66 N.M. 424, 349 P.2d 337, 84 A.L.R.2d 1269.

The majority state that the objection to the testimony of the state police officer for the reason that it was an expression of opinion of the interpretation of a statute is advanced for the first time on appeal. Why the majority discuss this point as applicable only to the testimony of Captain Bradford, the state police officer, I do not understand. The point as stated in the brief goes to a claimed error of the court in permitting opinion evidence relating to the interpretation of §§ 64–18–47 and 64–18–48, N.M.S.A. 1953, and went to testimony not only of the police officer, but also to the testimony of Mr. Paul Gallegos, the associate director of bus transportation for the Albuquerque public schools.

The record discloses that Mr. Gallegos was called as a witness by appellee and after certain assumed facts were recited was asked, "Now is it proper for the bus driver to use his control signals at a controlled intersection?" Objection was made, of which the following is a part:

"* * * I further object on the grounds that the question does not contain all the facts in this particular case and it is contrary to the law as recited in the statutes of the State of New Mexico. What his opinion is has nothing to do with changing the law of the State of New Mexico."

The objection was overruled and the witness permitted to answer. Error is claimed because of this action by the court. However, the opinion does not mention this argument beyond the discussion of qualification of experts. It was error for the trial court to overrule the objection.

Mr. Gallegos was followed by one other witness, a deposition was read into the record, and then followed Captain Bradford's testimony. The following developed shortly after he started to testify:

"Q Now, Captain, the accident in question here happened on March 15, 1960, and my question is directed toward that period of time. What was the procedure in Albuquerque so far as stopping at controlled intersections with a school bus?

"MR. MARCHIONDO: I object, your Honor, for the reasons previously stated, and * * *

"THE COURT: Objection overruled, and I will take note that your objection goes to the entire line of questioning.

"MR. MARCHIONDO: Also, if the Court please, I would object unless the question is better framed as to the actions and instructions to the driver of this particular bus.

"THE COURT: Well, I will overrule at this time. You can cover it in cross examination if necessary.

"Q What I am asking is the proper procedure for busses to follow who are going to unload children at a controlled intersection.

"A They should move to a controlled intersection, if it is in the proximity, for the added protection there.

"Q What, if anything, are they required to do so far as emergency signals are concerned?

"A Well, it has been our interpretation that, within the city, it hasn't been necessary to turn on emergency equipment to load or unload

children within residential or business areas.

"Q What do you mean by emergency equipment?

"A Those flashing red lights and the stop arm."

It seems clear to me that when the appellant objected "for the reasons previously stated" and was then stopped by the court's ruling, it cannot be asserted that the objection made to a similar question asked of Mr. Gallegos should not be considered as having been included in the objection counsel was attempting to make. While in every situation this might not be true, with a question as obviously objectionable as this one because it called for a legal conclusion of interpretation by the witness, and particularly since a proper objection had been made previously in the trial to a comparable question, the point should not now be disposed of with the simple comment that it is raised in this court for the first time.

Hancock v. Beasley, 14 N.M. 239, 91 P. 735; Bishop v. Mace, 25 N.M. 411, 184 P. 215; and Frei v. Brownlee, 56 N.M. 677, 248 P.2d 671, cited by the majority, state a rule applicable only where evidence had been admitted without objection, and they are not in point here. McKenzie v. King, 14 N.M. 375, 93 P. 703, involved an attempt to bolster an objection which was not proper, and likewise is not in point.

I would also mention that the majority recognize that violation of a statute is negligence per se, and when a person is injured as the proximate result of such a violation he is entitled to damages provided the statute violated was enacted for the benefit of the person injured, citing Bouldin v. Sategna, 71 N.M. 329, 378 P.2d 370, and Zamora v. J. Korber & Co., Inc., 59 N.M. 33, 278 P.2d 569. They then analyze the statute and conclude that the statute was not for the benefit of the school children. My only response to this is simply to point out that it does not appear who else the legislature had in mind when passing the statute, and to inquire who could they have been trying to protect if not the school children who ride the school busses. I submit that the purpose of the statute was clearly the protection of children getting off or onto a school bus, and we should not indulge in strained interpretations to conclude otherwise. As a matter of fact, the majority while concluding that school children were not the intended beneficiaries of the statute, nevertheless do not state who they think were to be protected thereby.

I question the correctness or propriety of applying the California rule as quoted from Alarid v. Vanier, 50 Cal.2d 617, 327 P.2d 897, discussed in Jackson v. Southwestern Public Service Co., 66 N.M. 458, 349 P.2d 1029. In this connection, it should only be necessary to point out that whereas

in New Mexico violation of a statutory duty is negligence per se, Bouldin v. Sategna, supra, in California only a presumption of negligence is created by such proof. Alarid v. Vanier, supra. I do not suggest that liability will always result where a party is negligent through breach of a statute or ordinance. Bouldin v. Sategna, supra; Zamora v. J. Korber & Co., Inc., supra; Duncan v. Madrid, 44 N.M. 249, 101 P.2d 382; Gutierrez v. Koury, 57 N.M. 741, 263 P.2d 557. However, it is not proper, in any view, to permit public officials to express their opinion as to the meaning of the law so as to excuse departure from the requirements of the statute, and this is certainly true when it is clear that their views and opinions were not the basis for the actions of the party accused of negligence.

I cannot escape the conclusion that the majority have not correctly interpreted § 64–18–48, N.M.S.A. 1953, nor have they correctly ruled concerning expert testimony objected to by appellant. The cause should be reversed and remanded for a new trial. I wish my disagreement and dissent to the opinion noted.

CARMODY, Justice (dissenting).

Although, along with Justice MOISE, I was not a member of the panel which originally considered this case, yet I feel that the opinion of the majority is so erroneous in law that I would be remiss in my duty to fail to make my disagreement known. Therefore, I join in the above dissent.