This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                          NO.   29,732

**STEVEN BAUER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Carl J. Butkus, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Lisa A. Torraco
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**CASTILLO, Chief Judge.**

Defendant appeals from the district court's decision following an on-record review of his convictions for driving while intoxicated (DWI) and careless driving. On appeal, Defendant contends that the State violated its duty to provide discovery of the gas chromatography document with regard to the blood test, and the trial court erred in denying Defendant's motion for a new trial. We affirm.

## I.    FACTUAL BACKGROUND

On September 11, 2005, Defendant was involved in a single car, roll-over crash. The responding officer followed the ambulance to the hospital and met with Defendant at the hospital while he was waiting to be treated, at which time, the officer noticed "heavy signs of intoxication" and was told by Defendant that he had consumed two beers and two margaritas. Defendant performed poorly on field sobriety tests, and blood test results showed an alcohol level above the legal limit.

At a pretrial hearing on June 14, 2007, Kelly Gomez, a chemist, referred to and produced a "standard packet" that contained the chromatogram[1] for the test on Defendant's blood. Defense counsel[2] claimed surprise and moved to suppress the

---

[1]  Counsel uses the term chromatogram and chromatograph interchangeably. We take this opportunity to clarify that a chromatograph is the actual instrument used to carry out the chromatographic separations while a chromatogram is the recording containing the graph of the result.

[2]  Two attorneys represented Defendant in the proceedings below. The attorneys are both referred to as defense counsel in this opinion.

evidence based on discovery violation. The motion was denied, and the case proceeded to trial on June 15, 2007. On the morning of trial, defense counsel informed the trial court that the chromatogram had been faxed to one out-of-state expert and one in-state expert, and both found problems with the gas chromatogram. In response to defense counsel's request to call the experts if the blood chromatogram were to be admitted, the trial court reserved ruling until after the police officers testified. Following testimony by the officers, the trial court granted Defendant's motion to suppress the chromatogram, not based on problems with discovery, but because the State had not established the time of the accident. However, the trial court ruled that the State would be permitted to ask its witness whether or not the blood test performed on Defendant's blood showed the presence of alcohol. Before the expert witness testified, defense counsel suggested that the parties might be able to stipulate that the blood showed the presence of alcohol and thereby avoid calling the State's expert to testify. The parties agreed and tendered a stipulation to the court.

Both parties then rested their cases. Defendant was found guilty of DWI based on impairment to the slightest degree and careless driving. After the trial was over, Defendant received a letter from his out-of-state expert stating that "[t]he lab failed to provide evidence of performance monitoring and other essential criteria regarding the quality of their procedures and techniques." The letter included an opinion by the

3

expert that, "to a reasonable degree of scientific certainty," the blood alcohol test "lacks basic scientific accuracy and reliability for consideration as a valid test result for evidential purposes." Based on the letter, Defendant filed a motion for a new trial, which was denied by the trial court. On appeal to the district court, the judgment and sentence was affirmed in a memorandum opinion. Defendant appealed that decision to this Court.

**II.     DISCUSSION**

Defendant frames his issues as involving error by the State for failing to timely disclose the blood test chromatogram and error by the trial court for failing to grant a new trial in order to allow Defendant to present expert testimony about the chromatogram. We address the issues under the two sections below. In composing his brief, Defendant included various other claims regarding the proceedings below. We briefly address those claims at the end of each section.

We note that in Defendant's brief, he refers to some portions of the record proper, some general date citations to the trial court proceedings, and some more specific citations to the proceedings below. However, for a number of Defendant's assertions, he provides no citation to the record. We will not search the record to find support for Defendant's contentions. *See Ross v. City of Las Cruces*, 2010-NMCA-015, ¶ 18, 148 N.M. 81, 229 P.3d 1253; *see also State v. Hunter*, 2001-

NMCA-078, ¶ 18, 131 N.M. 76, 33 P.3d 296 ("Matters not of record present no issue for review."); *State v. Jensen*, 1998-NMCA-034, ¶ 18, 124 N.M. 726, 955 P.2d 195 ("When a case is assigned to a general calendar, the factual basis for the issues must be contained in the record of proceedings made below."). The State's brief provides more information regarding the portions of the record cited to by Defendant, and Defendant did not file a reply brief or otherwise challenge the State's statement of facts. Therefore, to the extent that Defendant did not provide appropriate citations to the record and would now argue that the State's rendition of the facts is incorrect, we point out that this Court indulges every presumption in favor of the "correctness and regularity" of the trial court's decision. *State v. Rojo*, 1999-NMSC-001, ¶ 53, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

**A.      Discovery of Blood Test Chromatography Report**

Defendant contends that the State violated its duty to provide discovery when Defendant did not receive the document showing the results of the gas chromatography test on Defendant's blood. At a pretrial motions hearing, the State's expert testified that the chromatogram was raw data and stated that the document had not been provided to the prosecutor. Defendant asked for the evidence during the pretrial proceedings, and the trial court granted the request.

Rule 7-504(A) NMRA governs discovery in the metropolitan court. The portion of that rule that pertains to the State provides:

> **Disclosure by prosecution.** Unless a different period of time is ordered by the trial court, within thirty (30) days after arraignment or the date of filing of a waiver of arraignment, the prosecution shall disclose and make available to the defendant for inspection, copying and photographing any records, papers, documents and statements made by witnesses or other tangible evidence in its possession, custody and control that are material to the preparation of the defense or are intended for use by the prosecution at the trial or were obtained from or belong to the defendant. Such disclosure shall include a written list of the names and addresses of all witnesses whom the prosecution intends to call at the trial, together with any statement made by the witness and any record of any prior convictions of any such witness that is within the knowledge of the prosecution. In cases involving charges of domestic violence, the prosecution may use the district attorney's office as the address for the alleged victim.

Rule 7-504(H) provides:

> **Failure to comply.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection of materials, grant a continuance, or prohibit the party from calling a witness, or prohibit the party from introducing in evidence the material, or it may enter such other order as it deems appropriate under the circumstances, including but not limited to holding an attorney, party or witness in contempt of court.

In response to Defendant's claim that the State violated the discovery rule and to his motion to suppress the evidence, the trial court stated that, based on its notes and memory of the previous hearings, Defendant had been repeatedly told to bring

6

discovery problems to the court's attention. As noted by the State and not disputed by Defendant, during various proceedings leading up to the trial, defense counsel conceded that the blood test materials had not been requested as the laboratory witnesses had not yet been interviewed and told the judge that a subpoena or other request for materials would be served on the laboratory. At the third pretrial hearing, defense counsel agreed that discovery had been provided in the past week and stated that he had not had a chance to review initial discovery, but assured the trial court that "if there are any problems at all, [he would] file a supplementary discovery pleading." In addition, according to the State's expert, defense counsel told the expert that he wanted to view the blood kit, but after the expert stated that she would have to speak to her supervisor about it, defense counsel stated that he would check with the supervisor himself.

The trial judge pointed out that (1) the chromatogram was never requested by defense counsel, (2) Defendant did not exercise due diligence in securing the chromatogram, and (3) the State was not required to obtain the evidence for Defendant as it was not exculpatory. *Cf. State v. Laney*, 2003-NMCA-144, ¶ 28, 134 N.M. 648, 81 P.3d 591 (explaining that a defendant is required to make an effort to discover or obtain, for his or her defense, evidence that he or she is aware of or should be aware of). Defendant did not challenge the trial court's statement that the evidence was not

exculpatory. The trial court denied Defendant's motion to suppress the chromatography evidence.

On the day of trial, after the police officers testified, the trial judge ruled that, because the time of the accident had not been established by the testimony, the actual blood result document would be suppressed, but the State could ask its expert witness if the test showed the presence of alcohol in Defendant's blood. Defendant did not object to the ruling. Instead, as we discussed earlier, before the proceedings continued, defense counsel made a suggestion that the parties might be able to stipulate to the presence of alcohol and avoid calling the State's expert witness. The parties discussed and agreed to the following stipulation:

> The blood sample that was taken from [Defendant] was processed and tested by Kelly Gomez, an Albuquerque Police Department expert in toxicology and blood analysis, consistent with valid Albuquerque Police Department standard procedures, and Ms. Gomez's analysis confirmed the presence of alcohol in the blood sample.

For claims regarding failure to disclose evidence, we look at whether (1) the State breached its duty or intentionally withheld evidence from Defendant, (2) the evidence was material, (3) Defendant was prejudiced by non-disclosure of the evidence, and (4) the trial court provided a cure. *See State v. McDaniel*, 2004-NMCA-022, ¶ 8, 135 N.M. 84, 84 P.3d 701. Based on the trial court's rulings, the State did not breach its duty or intentionally withhold the evidence. *See id.* Even if

the chromatogram was material to the defense, however, given the other evidence to support Defendant's conviction, there was no reasonable probability that the result at trial would have been different if Defendant had the evidence before trial. *See id.* ¶ 11. Because the gas chromatogram was not admitted into evidence, the jury was not provided with the documentary results of the blood test performed on Defendant, and the State's expert did not testify about the specific result of the blood test, Defendant did not suffer prejudice. *Cf. State v. Montoya*, 2005-NMCA-078, ¶¶ 21-22, 137 N.M. 713, 114 P.3d 393 (stating that exclusion of evidence of actual result of alcohol test based on the time of the accident while allowing relevant testimony that alcohol was present in defendant's system was not prejudicial to the defendant). Finally, even though the trial court did not agree that the State had violated its obligation to provide discovery, the trial court granted defense counsel's request for the discovery and, ultimately, did not allow the chromatogram to be admitted into evidence, both of which are options for relief under Rule 7-504(H). We hold that the trial court did not err in denying Defendant's motion to suppress the chromatogram. *See McDaniel*, 2004-NMCA-022, ¶ 8.

Defendant next claims that he was denied the right to present his defense. Defendant argues that the only evidence of intoxication was the results of the blood test and, therefore, a review of the chromatogram by an expert witness was critical to

his defense. Defendant also claims that evidence of other indications of intoxication presented at trial was observed only after Defendant was transported to the hospital and "presumably medicated." Defendant presented no evidence to support his claim that he was "presumably medicated." In addition, besides the stipulation that alcohol was present in Defendant's blood, the jury was presented with evidence that Defendant had slurred speech, bloodshot watery eyes, performed poorly on field sobriety tests, and admitted to consuming alcohol. We reject Defendant's claim that he was deprived of his right to present a defense.

Defendant also argues that the "true accuser" was the machine that detected alcohol in Defendant's blood and generated a printout of the results. Defendant claims that the State was required to "provide 'the accuser'" at trial, by disclosing the information generated by the machine. As discussed earlier in this opinion, the chromatogram generated at the laboratory was not admitted into evidence. When the trial court ruled that it was not admissible, it also ruled that the State's expert could be asked whether the testing revealed the presence of alcohol in Defendant's blood. Defendant did not object to the ruling, but instead volunteered a suggestion that the parties stipulate to that information and avoid calling the expert to the stand. Therefore, by way of Defendant's offer of a stipulation, the information from the "true accuser" chromatography record, about which the expert would have been allowed to

testify, was voluntarily bypassed when Defendant agreed to have the jury hear that there was alcohol present in his blood.

Defendant asserts that the "mere technicality of a stipulation" does not negate the State's failure to disclose the chromatogram. We do not agree with Defendant's characterization of a stipulation to facts as a "mere technicality." *Cf. Lea Cnty. Good Samaritan Vill. v. Wojcik*, 108 N.M. 76, 83, 766 P.2d 920, 927 (Ct. App. 1988) (discussing conclusive and binding nature of stipulations). Moreover, as we have pointed out, the trial court disagreed with Defendant's argument that the State committed a discovery violation and ruled that the chromatogram would not be shown to the jury. Defendant has not demonstrated that the court abused its discretion on that issue.

Defendant also claims that the chromatogram was exculpatory evidence and, therefore, the State violated Rule 7-504, as well as Rule 16-308 NMRA, regarding professional conduct. In support of his claim, Defendant refers to his expert's letter regarding the chromatogram, which he did not receive until after trial. This letter indicated the laboratory had not provided information on performance monitoring as well as procedures and techniques utilized by the laboratory. Defendant does not clearly explain how the chromatogram qualifies as exculpatory evidence. He merely refers to general principles of law that evidence that is material to guilt or punishment

11

is exculpatory and that withholding exculpatory evidence constitutes a violation by the State and claims that his expert's letter "states" that the evidence is exculpatory, even though no such statement is included in that letter.

To show that the State failed to provide exculpatory evidence, Defendant was required to show that the State suppressed the evidence, and the evidence was favorable to Defendant and material to the defense. *See Case v. Hatch*, 2008-NMSC-024, ¶ 44, 144 N.M. 20, 183 P.3d 905. As noted above, Defendant did not challenge the trial court's statement that the evidence was not exculpatory. In addition, the trial court ruled that the State had not violated its duty to provide evidence. The letter relied on by Defendant does not support his claim that the evidence was exculpatory and was not admitted into evidence. The chromatogram that was the subject of the letter was not admitted into evidence, and testimony about the specific results from the chromatogram was excluded. Since the test results were not admitted into evidence, we fail to see how the allegedly deficient chromatogram would be exculpatory. Finally, given the evidence presented to show that Defendant was impaired to the slightest degree, and the stipulation of the parties that alcohol was present in Defendant's blood, the actual chromatogram would not qualify as exculpatory evidence because it was not favorable to Defendant or material to his defense. *See id.*

Defendant also suggests that he would not have agreed to a stipulation if he had been able to consult an expert before trial and that the only reason he entered into a stipulation was because he was unable to obtain an expert "to rebut [the] gas chromatogra[m] at the onset of trial." Defendant states that "[t]he stipulation was in lieu of [D]efendant's right to put forth a defense." Contrary to Defendant's claims, Defendant had, in fact, sent the chromatogram to two experts before the onset of trial, both of whom indicated that they found problems with the document. Despite that knowledge, Defendant did not attempt to get a continuance, but instead proposed and agreed to the stipulation. *Cf. State v. Campos*, 1996-NMSC-043, ¶ 47, 122 N.M. 148, 921 P.2d 1266 (holding that fundamental error will not be found where defendant invited mistakes by voluntarily abandoning cross-examination and agreeing to admission of evidence).

As a final matter, Defendant mentions ineffective assistance of counsel. However, he provides no facts or argument to indicate that he intended to include that claim as an issue on appeal. To the extent that Defendant intended to claim that his counsel was ineffective, we observe that there is nothing to support the contention. Consequently, we decline to address that claim. *Cf. Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments.").

13

**B.      Motion for New Trial**

On June 25, 2007, after receiving the letter from his expert, Defendant filed a motion for new trial based on newly-discovered evidence.  In the motion, Defendant claimed that he asked the trial court for a continuance in order to obtain an expert to look at the chromatogram.  As discussed earlier in this opinion, the record does not support Defendant's claim regarding a request for continuance.  During the discussion before the trial court, Defendant made a request that, in the event that the blood evidence was admitted, he should be permitted to call witnesses that he had retained.  Defendant told the trial court that he could not get his out-of-state witness to the court "today," but he never requested a continuance.  *See State v. Barraza*, 110 N.M. 45, 48-49, 791 P.2d 799, 802-03 (Ct. App. 1990) (holding that the defendant waived any claim of prejudice from late disclosure of evidence by not requesting a continuance).

A new trial on the basis of newly-discovered evidence is warranted if Defendant shows that the evidence (1) was discovered since trial; (2) could not have been discovered before trial by exercise of due diligence; (3) is not merely cumulative; (4) is not merely impeaching or contradictory; and (5) would likely change the result. *State v. Moreland*, 2008-NMSC-031, ¶ 17, 144 N.M. 192, 185 P.3d 363.  First, the chromatogram was discovered before trial, and an initial assessment of the chromatogram by Defendant's two experts was discovered before trial.  The only

14

information discovered after trial were the contents of the opinion letter from one of Defendant's experts. Second, the trial judge, referring to her notes and her memory, stated that discovery issues had been repeatedly discussed and Defendant had been told to bring any discovery problems to her attention. With respect to discovery, defense counsel assured the trial judge that he would file a supplementary discovery pleading if he found any problems and, when looking for blood evidence from the laboratory, defense counsel stated that he would contact the laboratory supervisor himself about the matter. Defendant actually received two initial assessments of the chromatogram indicating problems with the document. Therefore, both the chromatogram and an expert opinion based on the chromatogram could have been discovered before trial through the exercise of due diligence.

It is not necessary to inquire into whether the chromatogram evidence was merely cumulative, impeaching, or contradictory because no evidence with respect to the specific results of the blood test was admitted at trial. Finally, because the chromatogram and its contents were never admitted at trial, it is unlikely that the result at trial would have been different if Defendant had the evidence before trial. The trial court properly denied Defendant's motion for new trial.

**III. CONCLUSION**

Based on our discussion, we affirm Defendant's convictions.

15

**IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**LINDA M. VANZI, Judge**